UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA S. MITLYNG,<br><br>               Plaintiff,<br><br>v.<br><br>CITY OF ANACORTES, et al.,<br><br>               Defendants. | No.  C05-123Z<br><br>ORDER |

This case comes before the Court on the Individual Defendants' Motion for Summary Judgment, docket no. 10, and the Plaintiff's Cross-Motion for Summary Judgment, docket no. 21.  The Court has reviewed the briefs in support of and in opposition to the motions and enters the following order.

## BACKGROUND

On January 15, 2003, trial was held in the divorce proceedings of Plaintiff Linda Mitlyng and her husband, Richard Mitlyng.  Mitlyng Decl., docket no. 22, ¶ 3.  The court awarded, *inter alia*, the house located at 1215 37th Street, Anacortes, Washington to Mr. Mitlyng and a Maxima automobile to the Plaintiff.  Id.  Ms. Mitlyng picked up the car on Saturday, February 1, 2003.  Id. at ¶¶ 8-9.  Later that day she discovered several gift certificates belonging to Mr. Mitlyng in the car.  Id. at ¶ 10.  She returned to Mr. Mitlyng's house and put the gift certificates in a box with some of his other belongings which had been in the car.  Id.  As she was looking through the box for the car lighter, which she had noticed was missing, Mr. Mitlyng came out of the house.  Id.

ORDER   -1-

Mr. Mitlyng told her that she was not leaving with the car. Id. Mr. Mitlyng then ran for the car and got in on the driver's side. Id. at ¶ 12. The Plaintiff got in on the passenger side and tried to tell him that the car had been awarded to her in the divorce. Id. Mr. Mitlyng got out of the car and the Plaintiff slid over to the driver's side. Id. The Plaintiff started the engine and Mr. Mitlyng opened the hood. Id. The Plaintiff then put the car in reverse and let her foot off the brake, and the car shimmied because the emergency brake was on and the driveway is on an incline. Id. at ¶ 13. The Plaintiff claims that she then saw Mr. Mitlyng climb on to the engine and begin grabbing at cables in the engine.

The Plaintiff states that Chris Damarjian, a work colleague of Mr. Mitlyng's who had arrived at his home to pick him up, got out of a car and ran to the front of the Maxima and talked with Mr. Mitlyng. Ms. Damarjian then ran around to the driver's side of the car and began screaming at the Plaintiff. Id. at ¶ 14. The Plaintiff got out of the car, but soon realized that Mr. Mitlyng was not hurt or afraid, and that Ms. Damarjian and Mr. Mitlyng were trying to get her away from the car. Id. at ¶¶ 16-17. The Plaintiff got back in the car, put her foot on the brake and took the emergency brake off. Id. at ¶ 18. Mr. Mitlyng was still on the engine, and the Plaintiff states that he had climbed farther into the engine and was attempting to pull the wires off. Id. at ¶ 19. The Plaintiff let her foot off the brake and the car rolled down the drive. Id. at ¶ 20. When the car reached the street, the Plaintiff stopped the car, put it in park and got out. Id. at ¶ 21. Mr. Mitlyng then stepped away from the car. Id. Mr. Mitlyng and Ms. Damarjian walked over to Janet Brynteson, a second colleague of Mr. Mitlyng's who had arrived with Ms. Damarjian, and began talking. Mr. Mitlyng, Ms. Damarjian, and Ms. Brynteson are all teachers at Mt. Erie Elementary. Id. at ¶ 22.

At about that time, three or four Anacortes police cars arrived. Id. at ¶ 23. Officer Mike Perkins and Officer Johnson approached the Plaintiff and began talking to her. Id. at ¶ 24. Shortly thereafter, Sergeant Small arrived at the scene, greeted Mr. Mitlyng, and began talking to Mr. Mitlyng, Ms. Damarjian, and Ms. Brynteson. Id. at ¶¶ 25-26. The Plaintiff

ORDER   -2-

states that Mr. Mitlyng was not injured nor did his clothes show any signs of damage. Id. at ¶ 27. However, on February 1, 2003, Mr. Mitlyng visited Island Hospital. Perkins Decl., docket no. 13, Attach. at 14-21. The report of this visit indicates that Mr. Mitlyng had a contusion of his left big toe and a fractured left rib. Id. at 18.

The facts as presented by the Defendants are slightly different. According to Ms. Brynteson's statement, given to the Anacortes Police Department, while the Plaintiff was in the driver's seat of the Maxima, the car moved forward and Mr. Mitlyng fell into the engine. Id. at 3-4. Mr. Mitlyng was yelling in pain while he was on the engine. Id. at 4. According to Ms. Brynteson's statement, the Plaintiff put the car in reverse even though Ms. Damarjian was pleading with her to stop because Mr. Mitlyng was hurt. Id. Both Ms. Damarjian's and Ms. Brynteson's statements state that the Plaintiff said that Mr. Mitlyng was only pretending to be hurt. Id. at 4, 7. Once the Plaintiff exited the car, Ms. Damarjian's statement says she entered the car, turned it off, and removed the keys. Id. at 7A. Mr. Mitlyng's statement confirms that he was thrown into the car's engine when the car jerked forward. Id. at 9.

Officer Perkins asked the Plaintiff for her driver's licence, which she handed to him. Mitlyng Decl. at ¶ 29. He also asked her whether the address on the licence was current. Id. She replied that it was, but that she did not want Mr. Mitlyng to have her current address because he had previously assaulted her. Id. Officer Perkins asked her what had happened that morning and she related her version of the events. Id. at ¶ 33. Officer Perkins then talked to Sergeant Small and came back and told her that she was being arrested. Id. at ¶ 34. Officer Perkins arrested the Plaintiff for Domestic Violence Trespass and Domestic Violence Reckless Endangerment. Perkins Decl., Attach. at 12. Officer Johnson took the Plaintiff to the Skagit County Jail where the Plaintiff was booked and jailed. Mitlyng Decl. at ¶ 37.

The week following her arrest, the Plaintiff met with Prosecutor Steve Mansfield to discuss dismissal of the case against her. Id. at ¶ 54. The Plaintiff told Mr. Mansfield that she was in the process of applying to the Washington Bar and the State Department, but the

ORDER  -3-

arrest prevented her from going forward with either process until the charges were dismissed. Id. at ¶ 55. Mr. Mansfield told her that he would have to discuss the case with Mr. Mitlyng. Id. at ¶ 56.

Approximately one month later, the Plaintiff called Mr. Mansfield and asked him about the status of the case. Id. at ¶ 57. Mr. Mansfield told her that he had not had an opportunity to discuss the case with Mr. Mitlyng, that he could not discuss the case with her, and that she should retain an attorney. Id. The Plaintiff retained David M. Wall as her attorney. Id. at ¶ 58.

The Plaintiff claims that on two occasions after she retained Mr. Wall, Mr. Mitlyng contacted Mr. Wall to use the criminal case to extort her. Id. at ¶ 59. Mr. Mitlyng told Mr. Wall that he would dismiss the case against her if she would dismiss her appeal of their divorce judgment. Id. The criminal case against her was dismissed on June 26, 2003. Id. at ¶ 61.

The Plaintiff has filed a complaint against Officer Mike Perkins, Sergeant John Small, Anacortes Police Chief Mike King, City Attorney Ian Munce, and City Prosecutor Steve Mansfield (together the "Individual Defendants"), as well as the City of Anacortes, alleging violations of her civil rights under 42 U.S.C. §§ 1983, 1985 and 1988, and intentional infliction of mental distress. The Individual Defendants move for summary judgment based on qualified immunity and prosecutorial immunity, docket no. 10.[1] The Plaintiff cross-moves for summary judgment against the defendants on the sole issue that there was no probable cause as a matter of law to arrest her, docket no. 21.[2]

---

[1] The Introduction to the Individual Defendants' Motion mentions in one sentence that the City of Anacortes asks the Court to dismiss the charges against it. Defendants' Motion, docket no. 10, p. 1. However, the City of Anacortes presents no arguments in support of its request, therefore the Court does not address it in this order.

[2] The Individual Defendants object to the Plaintiff's Cross-Motion insofar as it is not timely under Fed. R. Civ. P. 7 and 56 and the Western District of Washington Local Rules. Individual Defendants Motion, docket no. 10, n. 1. Dispositive motions are not due until August 29, 2005. See Scheduling Order, docket no. 8. Although the motion may have been incorrectly

ORDER -4-

# DISCUSSION

## I. Cross-Motions for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On cross-motions for summary judgment, the Court must consider each party's motion separately and determine whether that party is entitled to a judgment under Rule 56. W. Land Exch. Project v. United States BLM, 315 F. Supp. 2d 1068, 1075 (D. Nev. 2004). In making these determinations, the Court must evaluate the evidence offered in support of each cross-motion, Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136-37 (9th Cir. 2001), and must consider the motions with all reasonable inferences favoring the non-moving party. Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1111, 1117 (9th Cir. 2001).

## 2. Prosecutorial Immunity for Prosecutor Mansfield

The Individual Defendants argue that Mr. Mansfield is entitled to absolute immunity and should be dismissed from this case. The Plaintiff argues that Mr. Mansfield is named as a defendant because he failed to perform his prosecutorial duties and instead abdicated that role to Mr. Mitlyng. Plaintiff's Response, docket no. 21, at 16. Mr. Mansfield, who currently works as a contract prosecutor for the City of Anacortes, decided not to prosecute the case based on the travel schedules of Mr. Mitlyng, Ms. Damarjian and Ms. Brynteson, the Plaintiff's compliance with a no-contact order, and Mr. Mitlyng's request that the charges be dismissed. Mansfield Decl., docket no. 14, ¶¶ 3, 15-16.

A prosecuting attorney is absolutely immune from suit under state and federal law for actions taken within the scope of his duties in initiating and pursuing a criminal prosecution. Imbler v. Pachtman, 424 U.S. 409, 424-28 (1976); Musso-Escude v. Edwards, 101 Wash.

---

noted, see Local Civil Rule 7(d), the issues have been fully briefed and the Court considers the Plaintiff's motion on its merits.

ORDER   -5-

App. 560, 570 (2000). Absolute prosecutorial immunity is applicable when a prosecutor is performing the traditional role of an advocate. Kalina v. Fletcher, 522 U.S. 118, 125-26 (1997).

Mr. Mansfield is immune from prosecution in this action. The Plaintiff directly attacks Mr. Mansfield's decision not to prosecute her. The Plaintiff attempts to prevent the dismissal of her claims against Mr. Mansfield by claiming that he failed to perform his prosecutorial duties. However, the decision whether to prosecute is part of the traditional role of an advocate. The fact that Mr. Mansfield took Mr. Mitlyng's wishes, along with other factors, into account when making this decision does not remove it from the category of activities for which a prosecutor has absolute immunity. The Court GRANTS the Individual Defendants' motion for summary judgment, docket no. 10, as to Mr. Mansfield and dismisses the Plaintiff's claims against him with prejudice.

### 3. Prosecutorial Immunity for City Attorney Munce

The Individual Defendants move for the dismissal of City Attorney Ian Munce on the ground of prosecutorial immunity. The Plaintiff argues that Mr. Munce is named in this lawsuit in his administrative and supervisory capacity, not as a prosecutor. Plaintiff's Response at 15. The Plaintiff argues that as Mr. Mansfield's supervisor Mr. Munce failed to insure that Mr. Mansfield was properly trained and supervised. Id. Further, the Plaintiff argues that Mr. Munce is responsible for policy and procedures of the Anacortes City Attorney's Office ("ACAO"). The Plaintiff believes, and has alleged in her complaint, that it is the policy of the ACAO to allow victims to decide whether to go forward with domestic violence prosecutions. Plaintiff has not produced any evidence that this is the policy, but expects to obtain evidence of this policy in discovery.

City Attorney Ian Munce is entitled to absolute prosecutorial immunity. As the Ninth Circuit decided in the unpublished decision Modahl v. County of Kern, a county or city attorney performing supervisory functions intimately associated with the judicial phase of the

ORDER -6-

criminal process is absolute immune from civil liability. 61 Fed.Appx. 394, 397, 2003 WL 1870878, **2 (9th Cir. 2003). Management and supervision of staff in preparation for trial, as well as the development of prosecutorial policy, fall within the sphere of prosecutorial duties which are absolutely immune from civil liability. Id.; see also Truvia v. Julien, 2005 WL 83246, *1 (E.D. La. Jan 13, 2005) (citing Modahl v. County of Kern and holding that the management and supervision of staff involves actions preliminary to the initiation of prosecution and supervisory attorneys are immune from prosecution for these actions). Additionally, Mr. Munce is immune from state civil liability for his actions setting policy and supervising other attorneys under Musso-Escude v. Edwards, 101 Wash. App. at 574 (holding that a prosecutor is absolutely immune from civil liability when acting within the scope of his duties as an advocate initiating and pursuing a criminal prosecution). The Court GRANTS the Individual Defendants' Motion for Summary Judgment, docket no. 10, as to Mr. Munce, and dismisses the Plaintiff's claims against him with prejudice.

### 4. Qualified Immunity of Officer Perkins and Sergeant Small

The Individual Defendants move for summary judgment on the claims against Officer Perkins and Sergeant Small based on qualified immunity. Plaintiff cross-moves for summary judgment arguing that these police officers did not have probable cause to arrest her as a matter of law, docket no. 21.

Under the doctrine of qualified immunity, government officials, including police officers, are shielded from civil liability for performing discretionary functions, as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Anderson v. Creighton, 483 U.S. 635, 638 (1987). Generally, "[q]ualified immunity 'is an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsythe, 472 U.S. 511, 526 (1985)). The threshold inquiry when determining the existence of qualified immunity is whether, taking the facts in the light most favorable to the Plaintiff, the officer's conduct

violated a constitutional right. Id. at 201. If no constitutional violation occurred, then no further inquiry is necessary and the suit should be dismissed. Id. However, if a constitutional violation may have occurred, then the inquiry turns to whether the constitutional right was clearly established. Id. A right is clearly established if it is clear enough that a reasonable officer in the arresting officer's situation would have recognized that his conduct was unlawful. Id. at 202.

### a. Was a Constitutional Right Violated?

The Court must first determine whether one of the Plaintiff's constitutional rights was violated. Id. at 201. The Plaintiff appears to allege a violation of her Fourth Amendment right to be free of unreasonable seizures. See Plaintiff's Response at 6-14. A police officer does not violate a constitutional right when arresting an individual if he has probable cause to believe a suspect has committed a crime for which state law provides she may be arrested without a warrant. "Officers have probable cause for an arrest if at the time of the arrest, 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing' that the defendant committed an offense." United States v. Henderson, 241 F.3d 638, 648 (9th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)).

Plaintiff was charged with Reckless Endangerment under the Anacortes Municipal Code ("AMC"):

> A. Every person who recklessly engages in conduct which creates a substantial risk of death or serious physical injury to another person is guilty of reckless endangerment.
>
> B. Reckless endangerment is a crime.

AMC § 9.16.040. See Mansfield Decl., docket no. 14, at 52. Recklessness is defined as follows:

> A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

ORDER -8-

AMC § 9.04.020(M).

Plaintiff was also charged with criminal trespass under the AMC:

A. A person is guilty of criminal trespass if he knowingly enters or remains unlawfully in or upon premises or vehicle of another.

B. Criminal trespass is a crime.

AMC § 9.28.040

Taking the facts in the light most favorable to the Plaintiff, the officers at the scene had probable cause to believe that the Plaintiff had committed one or both of these crimes. According to the Plaintiff, she had driven her car knowing that Mr. Mitlyng was lying on the engine. Based on this admission alone, there was reason to believe that Ms. Mitlyng engaged in conduct which created a substantial risk of death or serious physical injury to another person. Although the Officers who arrested the Plaintiff did not know at the time that Mr. Mitlyng was injured, the facts as related by the Plaintiff could have easily lead to injury. In this case, as Mr. Mitlyng's medical exam at Island Hospital revealed, he was injured in this incident. Further, the Plaintiff knowingly entered onto Mr. Mitlyng's property, apparently without his permission. Therefore, there was reason to believe that the Plaintiff had committed criminal trespass by knowingly entering and remaining unlawfully upon the premises of another.

Washington law allows for the warrantless custodial arrest for misdemeanors in certain cases. Wash. Rev. Code § 10.31.100(1) ("arrest without warrant") allows for the warrantless arrest of a person if a police officer has probable cause to believe "that a person has committed or is committing a misdemeanor or gross misdemeanor involving physical harm or threats of harm to any person or property . . . ." Officer Perkins and Sergeant Small could have reasonably interpreted the Plaintiff's actions as constituting a threat of physical harm to Mr. Mitlyng. The Plaintiff argues that a threat means "to communicate, directly or indirectly, the intent: (a) to cause bodily injury in the future to the person threatened or to any other person." Wash. Rev. Code § 9A.04.110(25). The Plaintiff's intentional action of

ORDER -9-

driving with Mr. Mitlyng on the engine of her car could reasonably be interpreted as a communication of an intent to cause bodily injury.

Officer Perkins and Sergeant Small had probable cause to arrest the Plaintiff and did not violate her Fourth Amendment rights in so doing. Therefore, the Court GRANTS the Individual Defendants' Motion for Summary Judgment as to Officer Perkins and Sergeant Small and dismisses the federal claims against them with prejudice.[3] The Court DENIES the Plaintiff's Cross-Motion for Summary Judgment, docket no. 21, on the issue of probable cause.

### 5. **Statutory Immunity for Officers Perkins and Sergeant Small**

Plaintiff's state law claims against Officer Perkins and Sergeant Small are barred by the statutory immunity set forth in Wash. Rev. Code § 10.99.070:

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

Wash. Rev. Code § 10.99.070. Officer Perkins and Sergeant Small were presented with facts

---

[3] An alternative basis exists for granting the Individual Defendants' Motion for Summary Judgment as to Officer Perkins and Sergeant Small. Even if Officer Perkins and Sergeant Small violated the Plaintiff's constitutional rights, they would still be entitled to qualified immunity because the constitutional right they allegedly violated was not clearly established. A right is clearly established if it is clear enough that a reasonable officer in the arresting officer's situation would have recognized that his conduct was unlawful. Saucier, 533 U.S. at 202. Police officers will in some cases reasonably but mistakenly conclude that probable cause is present. The Supreme Court has held that in such cases those officials should not be held personally liable. Anderson, 483 U.S. at 641.

Under the Washington law cited above, and given the facts as related by Plaintiff, Mr. Mitlyng, Ms. Damarjian, and Ms. Brynteson, Officer Perkins and Sergeant Small could have reasonably concluded that probable cause was present. The Plaintiff does not dispute that Ms. Damarjian and Ms. Brynteson, witnesses to the incident, related to the police officers that Mr. Mitlyng fell into the engine when the Plaintiff jerked the car forward. Although the Plaintiff may disagree with their version of events, given the information the police had at the time of the arrest, they could have reasonably concluded that the Plaintiff had committed reckless endangerment involving a threat of harm. See AMC §§ 9.16.040, 9.04.020(M): Wash. Rev. Code § 10.31.100(1). Therefore, Officer Perkins and Sergeant Small reasonably believed that they had probable cause to arrest the Plaintiff. Officer Perkins and Sergeant Small are entitled to qualified immunity.

ORDER -10-

and circumstances sufficient to warrant a good faith belief that Plaintiff had committed a crime arising out of an alleged incident of domestic violence. Therefore, the state law claims against them are barred by statutory immunity. The Court GRANTS the Individual Defendants' Motion for Summary Judgment, docket no. 10, regarding Officer Perkins and Sergeant Small and dismisses the Plaintiff's state law claims against them with prejudice.

### 6. Supervisory Liability of Anacortes Police Chief Mike King

The Individual Defendants argue that there is no basis for supervisory liability of Chief King and that he is entitled to qualified immunity. A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor may not be held liable in his individual capacity on the basis of *respondeat superior*. Id.; see also Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).

The Plaintiff does not present any evidence of Chief King's participation in, direction of, or knowledge of any constitutional violations. Instead, she argues that she expects to uncover such participation and direction during discovery. However, in the absence of any evidence or allegations, see Complaint, docket no.1, that Chief King participated in, directed, or had knowledge of any violation, the claims against Chief King must be dismissed as a matter of law. The Court GRANTS the Individual Defendants' Motion for Summary Judgment, docket no. 10, as to Chief Mike King and dismisses the Plaintiff's claims against him with prejudice.

## CONCLUSION

City Attorney Ian Munce and City Prosecutor Steve Mansfield are shielded from liability in this case by prosecutorial immunity. The Court GRANTS the Individual Defendants' Motion for Summary Judgment, docket no. 10, regarding Ian Munce and Steve Mansfield and dismisses the Plaintiff's claims against them with prejudice. Officer Perkins

1  and Sergeant Small are both entitled to qualified and statutory immunity for their actions in
2  this case. The Court GRANTS the Individual Defendants' Motion for Summary Judgment,
3  docket no. 10, regarding Officer Perkins and Sergeant Small and dismisses the Plaintiff's
4  claims against them with prejudice. The Plaintiff presents no evidence or allegations that
5  Chief Mike King participated in, directed, or knew of any constitutional violations by his
6  subordinates. The Court GRANTS the Individual Defendants' Motion for Summary
7  Judgment, docket no. 10, as to Chief King and dismisses the Plaintiff's claims against him
8  with prejudice.
9      Officer Perkins and Sergeant Small had probable cause to arrest the Plaintiff. The
10  Court DENIES the Plaintiff's Cross-Motion for Summary Judgment, docket no. 21, on the
11  issue of probable cause.
12
13      IT IS SO ORDERED.
14      DATED this 1st day of July, 2005.

*/s/ Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER   -12-